McCreight v. Central Drainage Dist. of Oktibbeha County.*

(Division B.  Dec. 22, 1924.)

[102 So. 276.  No. 23961.]

DRAINS.  *Total departure from route authorized by chancery court's decree must be approved by court.*

> Drainage commissioners could not construct canal or lateral over route constituting total departure from route authorized by chancery court's decree, and not a mere deviation made necessary by difficulties of construction, without approval of change in route by such court.

---

*Headnote. Drains, 19 C. J., section 155.

APPEAL from chancery court of Oktibbeha county.
HON. A. J. McINTYRE, Chancellor.

Eminent domain proceedings by the Central Drainage District of Oktibbeha County, to condemn land owned by J. E. McCreight.  From judgment condemning land, owner appeals.  Judgment reversed, and petition dismissed.

*W. W. Magruder,* for appellant.

This condemnation proceeding is for the purpose of constructing a certain extension to Lateral No. 2 of the Central drainage district, which extension is supposed to be under the authority of sections 4279 to ˙4281, Hemingway's Code.  The proposed ditch or drain, constituting such extension of Lateral No. 2, begins at a point entirely outside of the drainage district on the Greensboro Road, which road lies about forty-five hundred feet South of McCreight's land.  Appellant insists that appellee has no right whatever to condemn his land

for the purpose of constructing a drain, lateral or extension outside of the drainage district, the sole purpose of which is to import into such district foreign waters which will be thereby concentrated and discharged on McCreight's land at the head of Lateral No. 2.

The chancellor in the court below took the position that appellant had no concern whatever in the instant case with the former location of this proposed extension about three-eighths of a mile West of its present location and excluded all testimony with reference thereto. The amazing feature of this situation is that the testimony shows that the decree rendered by the court in 1919 was for the evident purpose of locating such extension at that point, to-wit: three-eighths of a mile approximately West of its present location at the head thereof on Greensboro Road. McCreight had formerly owned certain lands on the original route which had been sold to J. P. Clark and on which in 1919, he held a vendor's lien for the unpaid purchase money. Because of such interest in the Clark lands on the route proposed at that time, McCreight's consent was secured to the construction of such extension, and decree was rendered accordingly. After the lapse of approximately four years' time, and under the supposed authority of this decree, and this decree only, McCreight's land is now to be condemned for an entirely different and distinct drain or extension of Lateral No. 2, three-eighths of a mile East of its former proposed location and at a point entirely outside of the Drainage District for the specific purpose of diverting Curry Branch from the lands of the Saunders estate and concentrating its large volume of waters on McCreight's land at the head of Lateral No. 2. We insist that no statute of this state, no section of our Drainage Laws, contemplates or authorizes any such procedure. It may be true and it is true that a drainage district does in certain cases have jurisdiction and authority beyond its own territorial limits; but

there is no provision of the Drainage Laws in this state which authorizes Commissioners to construct a canal or system of drainage entirely outside of the district for the purpose of diverting the flowage of an established watercourse from the lands of one man to the lands of another man; concentrating same at one certain point to his material injury.

*McIntyre & Roberds,* for appellee.

There is no power to construct a lateral, which imports into the district water from out the district. Section 4273, Hemingway's Code, recognizes the fact that water outside of the district must drain into the district. Section 4314 of that code makes a provision for land-owners outside of the district to construct private ditches connecting with the main ditch, or lateral. Section 4300, Hemingway's Code, imposes a liberal construction of the laws to promote the ditching, drainage and reclamation on certain swampy and overflowed lands, and the collection of taxes, etc.

There is no power in the commissioners to divert water from a natural watercourse into the district. Counsel contends the commissioners have no authority to divert water from a natural watercourse into the district. This presents the question: What is a natural watercourse? "A natural stream flowing in a defined bed or channel, with banks and sides, and having permanent sources of supply." Bouvier's Dictionary, Vol. 3, pp 2298, 3437.

Chancellor had no power to hear and dispose of this cause, because of the pending injunction proceeding. There are three answers to this contention: The first is that there is no proof as to whether the injunction was filed before or after the petition of the commissioners designating the Gladney survey. Second, no temporary injunction was asked for or granted. If the injunction proceeding was filed about November 1, 1922, as appears from the date of the affidavit to the copy of the bill,

then the appellant permitted his injunction proceeding to remain inactive from that time until this good day. The third reason is that the statute specificially provides that the work shall not stop upon the filing, or hearing of objections, where the decree confirms the appraisement and orders the condemnation, if the amount is paid to the chancery clerk, but "the district may enter upon and take possession of the said property and appropriate it to the proper use of said district, and the title to said property is thereupon fixed in said district." Section 4282, Hemingway's Code.

In the first place, there was a decree of court giving them the authority to make the extension. The decree of the court dated September 9, 1919, authorized the commissioners to expend one thousand dollars. The contract provides for one thousand dollars. The decree did not designate any specific route, but provided "and it appearing that said relief should be granted, and that the construction of a lateral is necessary — that the commissioners shall proceed to have such surveys made which in their judgment are necessary and proper and an estimate made of the costs of the construction of the entire work and shall then proceed to construct the entire work . . ."

The amount allowed appellant is inadequate to compensate for the damage which he will suffer by the construction across his land of this extension. According to our view, this is the only question presented by this record. It was decided by the chancellor upon conflicting evidence. The appraisers assessed the damage at twenty-five dollars. The chancellor increased that to fifty dollars. The amount of land to be taken is one-half acre. Fifty dollars is a very liberal allowance for the value of this land. The allowance by the appraisers was increased by the chancellor, perhaps, on the idea that appellant might have to construct a bridge across this ex-

tension in order to cultivate his crop. Certain it is this record contains sufficient evidence to support the finding of fact by the chancellor.

*W. W. Magruder,* in reply for appellant.

We insist, as we have emphasized in our original brief, that the Drainage Laws of this state confer no authority whatever to dam up an established watercourse outside of a district and to divert its waters into the district and upon the land of an individual owners thereof for the benefit of other interests and other owners.   We insist, futhermore, that the lower court was absolutely without authority or jurisdiction to condemn McCreight's land or to permit the construction of the Gladney ditch or extension across it under the original petition and decree of the court for the construction of the Thomas ditch approximately one-half of  a mile  West of the Gladney ditch.

The laws of our state may permit and justify such tactics but we doubt it.   Nothing short of a decision of this court will convince us that such procedure to the detriment and damage of an individual taxpayer can be possible under our statutes in this state.

Argued orally by *W. W. Magruder* for appellant, and *A. J. McIntyre,* for appellee.

Cook, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Oktibbcha county, rendered in an eminent domain proceeding to condemn certain lands belonging to the appellant, and located within the central drainage district of that county; the condemnation being for the purpose of securing a right of way for an extension of a drainage ditch known as lateral No. 2.

At the March, 1919, term of the chancery court, the drainage commissioners of Oktibbeha county filed a petition averring, in substance, that they had carefully in-

vestigated the affairs of the Central drainage district, and particularly that part of the district lying between the head of lateral No. 2 and the Greensboro public road; that said territory was low, flat, poorly drained by natural drainage, and was constantly subject to overflow from adjoining branches; that, for the purpose of relieving these conditions, it was necessary to construct an auxiliary ditch or lateral from a point on the Greensboro road to the head of said lateral No. 2; that said ditch could be constructed at a cost of approximately one thousand six hundred and seventy-seven dollars and thirty cents, as shown by an engineer's estimate filed therewith, prepared by E. C. Thomas, civil engineer; that said ditch would be five thousand and five hundred feet in length, with a six-foot bottom and a one to one slope, and that said ditch, constructed along the lines as surveyed by the said E. C. Thomas, would be ample and sufficient to carry off the overflow and drain said territory; that the plans, estimates, specifications, and report of the said E. C. Thomas, civil engineer, were filed therewith, showing in detail the character of the proposed ditch, its dimensions, etc., to all of which plans, estimates, specifications, and report specific reference was made, and they were made a part of the petition as fully as if copied therein.

The petition further averred that the proposed ditch was greatly needed for the relief of the conditions existing; that it would be to the best interest of the district, and particularly of the territory adjacent to the proposed ditch, that the same be constructed as outlined and described in the plans, specifications and report of the said E. C. Thomas, engineer; that the ditch as outlined would pass over the lands of certain named persons, including the lands of the appellant, and that all necessary rights of way for the proposed ditch could be secured from said landowners without expense to the district. The prayer of the petition was for an order of court authorizing, empowering, and instructing the commission-

ers to construct said auxiliary ditch in accordance with the said plans, specifications, estimate, and report filed therewith.

With this petition was filed a written instrument, signed by the appellant, J. E. McCreight, waiving service of process and notice of every kind, and consenting that the petition might be heard forthwith, and such orders or decrees granted thereon as should seem meet and proper to the court. On March 13, 1919, a decree was entered taking the petition under advisement for decree in vacation, and on September 9, 1919, a final decree was granted by the chancellor, adjudging that the construction of a lateral was necessary, and that certain relief should be granted, and authorizing the commissioners to proceed to have such surveys made as in their judgment were necessary and proper, and to have an estimate made of the cost of the entire work, and directing them then to proceed to construct the entire work, but limiting the amount which they might expend therefor to the sum of one thousand dollars and requiring that the entire work contemplated should be completed within that sum.

After the entry of this decree in September, 1919, no further action was taken until October 30, 1922, on which date the commissioners entered into a contract with Gunn and Saunders for the construction of a lateral over a route therein particularly described as:

"Commencing at the head of lateral No. 2, in the southeast quarter of the northwest quarter of section 36, township 19, range 13 east, Oktibbeha county, Miss., and running thence south twenty-five degree west a distance of two thousand nine hundred feet; thence south eighteen degrees west a distance of one thousand nine hundred feet."

On November 1, 1922, the commissioners filed a petition and report in the chancery court, averring that, acting under the directions and instructions of the decree of the chancery court entered on September 9, 1919, they

had proceeded to consider the proposed extension to lateral No. 2 of the district, and that, after making a personal inspection of said proposed extension, they found that the route of the proposed extension should be as set out in the contract with Gunn 'and Saunders, and as herein fully set out; that, after giving notice as required by law, they had let to Gunn and Saunders a contract for the construction of said work; the prayer of the petition being that the chancellor approve and ratify the location and route of said proposed extension, and also approve and ratify the contract and agreement made by the commissioners with said contractors. So far as the record discloses, no action was ever taken on this petition.

On the 9th day of March, 1923, the drainage commissioners filed a petition in the chancery court, averring that an extension to lateral No. 2 of said district had been approved and ordered constructed by the court; that a great portion of said lateral had already been constructed, but it was impossible to complete the construction thereof and empty the water into the head of lateral No. 2, for the reason that the appellant, J. E. McCreight, was the owner of a strip of land over which said lateral was to pass, and he refused to allow the construction of the same, and had ordered that the drainage commissioners, the engineer, and the contractor should not go upon said land; that the best interest of the district required that the necessary strip of land be condemned, and that the former decree of the court had settled and designated the proposed route of said extension; that the amount of land proposed to be taken by this condemnation proceedings was one-half acre more or less, and that the same had been appraised by the commissioner as being of the value of twenty-five dollars. The petition described the strip of land to be taken, and prayed for process for the appellant returnable to the March, 1923, term of the court, and that upon final hearing the land should be condemned as provided by law.

The appellant filed an answer to this petition, and at the final hearing a great deal of testimony was offered as to the condition of the territory affected, the natural drainage thereof, the volume of water to be diverted across appellant's land by the proposed ditch, the resulting damage to appellants land, and other issues. The testimony of the engineer who made the original plans, estimates, specifications, and survey of the proposed extension, which were referred to and made a part of the original petition filed in March, 1919, was offered, as was that of the engineer who surveyed and located the ditch actually under construction, and from the whole testimony it appears, without dispute, that the ditch or canal covered by the contract with Gunn and Saunders, and the ditch as originally surveyed by Thomas, connect with lateral No. 2 near the same point, but that the ditch covered by the second survey extends from that point over a different route, and in an entirely different direction, from the location of the first ditch, and that it connects with the Greensboro public road at a point between one-fourth and one-half mile east of the point where the first ditch connected with this road. At the conclusion of the testimony, the chancellor granted a decree condemning the land of appellant as prayed for in the petition, and assessing the damage at fifty dollars.

There are several questions argued by counsel, but in disposing of this case we think it will only be necessary to consider whether or not a precedent decree of the court, authorizing the digging of this additional canal and the expenditure of the funds of the district in paying therefor, was necessary, and, if so, whether the canal proposed by the commissioners, and upon which work was actually in progress, was authorized by the decree of the court made and entered on September 9, 1919.

When all the provisions of the drainage law under which this district was organized and was operating are considered together, it is clear that the entire scheme

contemplates that all the operations of the district shall
be under the general supervision of the chancery court,
and that in that forum the landowner and taxpayer shall
have the right and opportunity to present and have
passed upon his objections to the surveys, plans, specifi-
cations, and assessments made by the commissioners,
and after a district has been organized, and the surveys,
plans, specifications, and location of canals, ditches, and
drains have been fixed and approved, and the assessment
of benefits and damages, etc., have been made and ap-
proved, if it is then desired to establish and construct
other drains, ditches, and canals, and incur larger ex-
pense in so doing, we think the commissioners must first
apply to the chancery court for authority so to do, and
give the landowners an opportunity to be heard in op-
position thereto. In the case at bar the commissioners,
presumbably conceiving that the law required them so
to do, filed their petition asking the chancery court to
authorize the construction of this proposed canal. With
this petition and as a part thereof they filed a survey
and plans and specifications of the proposed canal, show-
ing the exact location, the length, depth, and dimensions
thereof, and upon this survey and location of the canal
they secured the consent of the landowners over whose
land the proposed canal would pass. Upon this petition,
and survey, plans, and specifications, they secured a de-
cree of the chancellor authorizing the construction of
said lateral or canal.

After the entry of this decree nothing more was done
in the matter for more than three years, and then the
commissioners let a contract for the construction of a
canal over a route entirely different from that covered
by the original survey and plans, claiming that this canal
was authorized, by the decree of the court rendered in
September, 1919. We think the testimony clearly shows
that the change in the route of this canal is not a mere
deviation made necessary by difficulties of construction,
but that it is a total departure from the route authorized

by the decree, and that until the construction of the canal
over the route now proposed is approved by a decree of
the chancery court the commissioners have no authority
to proceed with the work which they have undertaken.
Since we hold that the commissioners are without author-
ity to construct the canal or lateral over the route now
proposed, it follows that they have no right to condemn
the land of the appellant for a right of way for the
proposed canal, and consequently the judgment of the
court below will be reversed and the petition dismissed.

*Reversed and petition dismissed.*